**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | | CRIMINAL NO. 19-414 |
| v. | : | |
| IMAD DAWARA | : | |

## <u>GOVERNMENT'S MOTION FOR PRETRIAL DETENTION</u>

The defendant, Imad Dawara, and his brother, co-defendant Bahaa Dawara, intentionally set fire to their business, the Revolution Diner, located at 239-41 Chestnut Street in Philadelphia, during the early morning hours of February 18, 2018.   No one in Old City will forget the day this arson lit up the sky.   The brothers conspired to commit the violent crime out of a dual motivation: financial desperation and retribution against the landlord and other tenants of the building.   At approximately 3:11 a.m., Bahaa Dawara used gasoline to set fire to a basement of the building, all the while knowing that people were sleeping above him in their homes, while Imad Dawara stayed behind in a nightclub deliberating constructing his alibi.

The fire raged for hours, warranting a four-alarm response from the Philadelphia Fire Department during which two firefighters were injured.   Imad and Bahaa's callous, dangerous plan to start the fire for their personal gain resulted in the complete destruction of a five level multi-purpose building that included private residences and another business.   The victims of the fire now live in fear of the brothers the government has charged with setting it.

Since the fire, Imad and Bahaa Dawara have feigned cooperation in the investigation while lying to law enforcement to evade detection, and under oath to their insurance company to collect on their $750,000 policy.   The false statements they both made as part of their insurance

claim are the basis for the wire and mail fraud charges.   Given the charges in this case, the defendant now faces the possibility of a mandatory minimum term of 17 years in prison.   The strength and nature of this case combined with the significant sentence the defendant faces make him both a danger to the community and a flight risk.

As arson is a crime of violence, there is a statutory presumption of detention and this defendant cannot overcome this presumption. 18 U.S.C. § 3156(a)(4)(A),(B).   Because no condition or combination of conditions will reasonably assure the defendant's appearance as required or the safety of the community, the government moves pursuant to 18 U.S.C. § 3142(e) and (f) for a detention hearing and pretrial detention of this defendant.

I.     THE FACTS

In support of this motion, the government submits the following representations and proposed findings of facts:

A.     Probable Cause and The Evidence in This Case

1.     On July 18, 2019, a grand jury returned a 10-count Indictment charging Imad Dawara and Bahaa Dawara with federal arson and fraud.   Specifically, the defendants have been charged with one count of conspiracy to commit arson, one count of conspiracy to use fire to commit a federal felony, one count of malicious damage by means of fire of a building used in interstate commerce, one count of using fire to commit a federal felony, four counts of wire fraud, and two counts of mail fraud.   The total maximum penalties for the charges are 180 years' imprisonment, with a seventeen-year mandatory minimum, a three-year period of supervised release, a $2,500,000 fine, and a $1000 special assessment.

2.     The evidence in this case is strong.   From around December 2012 until February 18, 2018, the defendants owned and operated various restaurants and entertainment

- 2 -

establishments, including a hookah lounge, at 239-241 Chestnut Street, with Revolution Diner being in the space at the time of the arson.   The Dawara brothers were struggling in their business and had a history of fighting with their landlord.   By October 2015, their landlord sent the Dawara brothers a Notice of Default and Breach of Lease, citing numerous violations which included 26 citations from the Pennsylvania State Police Bureau of Liquor Control Enforcement. In response, Imad Dawara threatened the landlord that he would destroy the place if the landlord attempted to evict them.

3.      Business did not get better for the Dawara brothers.   In November 2015, the Court of Common Pleas of Philadelphia County prohibited the defendants from engaging the services of a disc jockey, providing live entertainment, and allowing the use of tobacco products (including hookah) on the premises unless they had the proper permits.   In November 2015, their landlord sent the defendants a Notice of Intent to terminate their lease.   By October 2017, the Dawara brothers had ceased all business operations for RCL Management at 239-241 Chestnut Street.   The brothers attempted to sell their business, but as they had failed to renew their lease or pay rent, no one would buy it.   On January 31, 2018, their landlord directed the defendants to vacate the premises by February 2, 2018 and advised the defendants that they owed over $64,000 in overdue payments.

4.      On the very same day that the defendants were ordered to vacate the premises, despite no longer doing *any* business at that location, Imad Dawara contacted an insurance broker to inquire about purchasing insurance for 239-241 Chestnut Street.   The Dawara brothers had not held an insurance policy on their business at the Chestnut Street location for over a year. Yet on the day they were asked to leave and approximately 16 days before the fire, Imad Dawara purchased insurance again.   In obtaining this new insurance policy, Imad Dawara asked the

- 3 -

insurance broker repeatedly how he would be paid "if there was a fire."   The insurance Imad

Dawara ultimately purchased on February 2, 2018 provided coverage in the event of an

accidental fire at 239-41 Chestnut Street for $750,000, which consisted of $500,000 for property

and $250,000 for business interruption.   And a mere four days prior to the fire, Imad Dawara

allegedly requested the broker send him proof of the insurance policy, which Dawara then called

in on the day of the fire.   As the fire was still burning, the defendant made a damning admission

about the origin of the fire to the insurance broker – a fact that no one but the arsonist (or his co-

conspirator) would know.

    5.      In the early morning hours of February 18, 2018, the first responding firefighters

noted that the front door of the ground level of 239 Chestnut, the only access door to that

property was left open.   Defendants Imad Dawara and Bahaa Dawara were the only people with

keys to that door.

    6.      As hundreds of Philadelphia firefighters were only beginning to fight a long battle

against this raging fire, the Philadelphia Arson & Explosives Task Force and the Philadelphia

Fire Marshal's Office responded to the scene of the fire at approximately 4:00 a.m. to conduct a

joint Fire Origin and Cause Investigation.   At the end of that months-long investigation, the

Bureau of Alcohol, Tobacco, Firearms, and Explosives' (ATF) Certified Fire Investigator

classified the fire as incendiary.   This conclusion was based on information including, but not

limited to, witness interviews, surveillance video, fire dynamics analysis, laboratory testing, and

arc mapping.   The investigation determined that the fire originated in the basement of 239

Chestnut Street and was the result of an open flame intentionally applied to gasoline, specifically

the vapors, poured on available combustibles located in the offices in the basement.

    7.      Both Dawara brothers lied under oath about their collective whereabouts on the

- 4 -

night of the arson.   Imad Dawara remained in the office at another business (the B-Side Complex located at 939 N. Delaware Avenue in Philadelphia), while Bahaa Dawara traveled to 239 Chestnut Street to start the fire in the basement.

      **B.**     **<u>Rebuttable Presumption</u>**

As there is probable cause to believe that the defendant has committed a crime of violence, under the definition in 18 U.S.C. § 3156, the Court must presume – subject to rebuttal by the defendant – that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community, or reasonably assure the appearance of the defendant as required.   The defendant cannot rebut this presumption.

Section 3156(a)(4) has an elements clause and a residual clause.   Although arson does not categorically qualify under the elements clause, it does qualify as "any offense that is a felony, and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."   The U.S. Court of Appeals for the Second Circuit recently held that the residual clause of the definition of "crime of violence" in the Bail Reform Act was not amenable to due process challenge as being unconstitutionally vague.   *United States v. Watkins*, -- F.3d --, 2019 WL 4865828 (2d Cir. Oct. 3, 2019).

In the present case, the defendant intentionally planned and carried out a devastating arson in the basement of a row of buildings, risking the lives of hundreds of people and destroying both his own and others' property.   There is no doubt that this crime involved a substantial risk of physical force against many persons and property of others.

## II.      DANGER TO THE COMMUNITY

The nature and strength of the case against the defendant, as well as the evidence of his threatening behavior leading up to the fire, establish that he is a danger to the community, including but not limited to the victims and other potential witnesses who will testify against him.   This was not a crime of passion.   Indeed, this was a premeditated and well-planned crime that was weeks – if not years – in the making.   When first faced with eviction by his landlord in October 2015, the defendant threatened to "destroy the place."   In the weeks leading up to the fire – after the defendants had already been technically evicted – the defendant purchased insurance for the property, specifically asking how much money he would be paid "if there was a fire."

In addition, while the defendant himself made sure to construct a false alibi for his brother in the safety of another location, neither defendant had any concern for the safety of their neighbors.   The buildings on that block were not only commercial properties, but were residential as well.   Notably, the Dawara brothers *knew* people lived in these buildings; after all, the defendants had previously had multiple disagreements with their landlord and residential neighbors, which included the defendants making multiple threats.   Nevertheless, they did not choose to set this fire when it was vacant.   They did not choose to set this fire when most residents would be out of the building at work or at school.   They chose to set this fire in the middle of the night, when many residents – some with families who had young children – were sound asleep inside.   Some residents can still recall screaming and banging on the doors to wake up two children as they all literally ran for their lives down smoke-filled stairs.

Two firefighters were injured while fighting this fire.   While thankfully no residents or firefighters died, lives were, in fact, lost.   After one resident fled his home, he begged

firefighters to let him back into the burning building to save his cherished pets.   His six rescue cats and four birds all perished.   Their owner could only stand on the street with only the clothes on his back, alongside his neighbors similarly situated, watching his home collapse on itself and knowing that his beloved animals were being burned alive.

More than one victim of the arson has contacted the undersigned attorney since the Indictment was unsealed and stated that they live in fear that the defendants will seek the victims out to harm them to prevent them from testifying.   Although the government will not disclose the names of witnesses at this time, the defendants will be easily able to discern from the Indictment who will likely testify at trial.

Despite the amount of damage and devastation caused by the defendants, many in law enforcement and the fire investigations community consider the residents lucky.   Given the pure force and magnitude of this fire, if the winds had been just a bit different on February 18, 2018, hundreds of lives could have been lost.   The Best Western Hotel was also on that block and housed many more sleeping individuals than the residences at 239-241 Chestnut Street. The Philadelphia Fire Department suppressed and contained this fire.   Without their skill and determination, the fire could have spread down the block. The defendants are lucky to be facing arson charges and not murder charges.

The defendant put countless lives at risk when he conspired to set this fire, motivated at the time by greed and retribution.   When his brother set the fire, he was risking lives and only going to gain (at most) $750,000 under insurance.   He now has much more to lose than ever before as this case is not about his money, but about his freedom.   The defendant has no prior criminal convictions – this is the first time that his liberty has ever been at stake.   The harsh potential sentence in this case – including the potential 17-year mandatory minimum in prison –

provides the defendant with a powerful incentive to retaliate against these witnesses.   He is a true danger. There are no conditions that the Court can impose in this case to ensure the safety of the community.

## III.   SERIOUS FLIGHT RISK

Multiple factors, including the strong likelihood that the defendant will be convicted and sent to prison for at least 17 years, make him a serious risk of flight.

### A.   __Foreign Ties and Travel__

Imad Dawara and his brother have significant ties to their native land of Syria and neighboring countries.   Upon arrest in this case, Imad and Bahaa Dawara, both naturalized U.S. citizens, claim to have maintained their citizenship in Syria, although the United States government does not recognize this alleged dual citizenship.   In addition to their U.S. Passports, both defendants have Syrian passports.   Travel records reveal that in June 2019, Imad Dawara traveled out of the United States to Qator and Lebanon, and returned in August 2019.   During this trip, Imad Dawara celebrated Bahaa Dawara's marriage to a Syrian citizen with their respective families.   Bahaa Dawara returned to the United States on the day of his arrest.   His new wife did not yet join him in this country.   Bahaa Dawara has traveled out of the United States eight times in the last five years, with the majority of the those trips to the Middle East. A potential witness close to Imad Dawara reported that Imad Dawara is currently building a house in Syria.   Thus, both brothers have established familial and recent ties to Syria.   If the defendant flees to Syria, the United States would have no recourse or way of assuring his return to the United States to face these charges.

### B.   __Money and Fraud__

The defendant has the means to flee.   Imad Dawara has also demonstrated his

- 8 -

propensity to deceive and commit fraud to advance his own agenda in a variety of ways.

Imad and Bahaa Dawara's many business entities are currently under investigation.   Since opening their nightclub on Delaware Avenue, "B-Side," they directed two other individuals to use their names as the listed owners of the club and the liquor license that they need to operate the club.   This fact is not in dispute; indeed, Imad Dawara admitted this deception during the "Examination Under Oath" related to his insurance claim related to the arson.   In February 2018, former employees of the 239-241 Chestnut Street business filed a complaint in a class action lawsuit for wage and hourly payment violations against the Dawara brothers.

The defendants' income tax filings are suspect.   The government's financial analysis revealed the possible existence of cash hoards deliberately kept from bank accounts to avoid detection by the government.   Imad Dawara recently offered $500,000 – in *cash* – to his neighbor in Swarthmore, Pennsylvania, in order to buy the neighbor's home for Bahaa Dawara to live there.

The defendant has the means to flee the United States and a place to go where he has a passport, family, and a house.   He is a serious risk of flight, and if he were successful in fleeing, the government would not be able to secure his return to face these charges.

## IV.    CONCLUSION

This crime had effects that continue to this day and will continue for years to come. Because of the arson, the 200 block of Chestnut Street was closed to traffic for months.   The entire area affected by the fire was deemed a potential collapse zone for weeks after the arson. Businesses were closed for months due to smoke and water damage.   Businesses affected included, but were not limited to, The Best Western Hotel, The Little Lion, Gina's 45, and

Capofitto Pizza & Gelato.   Some businesses remain closed to this day, and the gelato business went out of business altogether.   Today, there is a gaping hole at 239-241 Chestnut Street.   To date, the calculation of the estimated cumulative financial loss to the victims and the City of Philadelphia is in excess of approximately $25,000,000.

All of the above is a direct result of the defendant's depraved conduct and callous disregard for the well-being of people and property in this City.   The defendant is both a danger to his community and a person that cannot be reasonably relied on to appear at future hearings, as the defendant is facing a significant sentence of imprisonment for the crimes charged and has notable ties and foreign travel to his native country of Syria.

When all these factors are viewed in light of the substantial sentence the defendant faces if convicted, it is clear that no condition or combination of conditions will reasonably assure the presence of the defendant as required and the safety of the community.   For these reasons, the government respectfully requests that the defendant be detained pending trial.

Respectfully submitted,

WILLIAM M. MCSWAIN
United States Attorney


/s/ Jeanine Linehan
Jeanine Linehan
Assistant United States Attorney

- 10 -

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | | CRIMINAL NO. 19-414 |
| v. | : | |
| IMAD DAWARA | : | |

## <u>PRETRIAL DETENTION ORDER</u>

AND NOW, this        day of October 2019, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

     (a)    the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

     (b)    the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

     A.    There is probable cause to believe that the defendant has violated Title 18, United States Code, Sections 844(n) (conspiracy to commit arson); 844(m) (conspiracy to use fire to commit a federal felony); 844(i) (malicious damage by means of fire of a building used in

interstate commerce); 1343 (wire fraud); 1341 (mail fraud); 844(h) (use of fire to commit a federal felony); and, 2 (aiding and abetting), as charged in the Indictment.

       B.    The evidence in this case is strong and shows that on February 18, 2018, the defendant and his brother, co-defendant Bahaa Dawara, conspired to and did destroy 239 Chestnut by setting a fire that raged out of control for hours.

       3.    The strength and nature of the case against the defendant combined with the strong likelihood that the defendant will be incarcerated for a long time, establishes the defendant's danger to the community and increases the high risk that the defendant will not appear as required by the Court.

       Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correctional facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the correctional facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HONORABLE TIMOTHY R. RICE
United States Magistrate Judge

2

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the Government's Motion for Pretrial Detention, and

Proposed Order was served via ECF, on the following defense counsel:

Todd Henry, Esquire
Counsel to Imad Dawara

/s/ Jeanine Linehan
Jeanine Linehan
Assistant United States Attorney

Date:   October 21, 2019