IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 19-414-1 |
| | : | |
| IMAD DAWARA | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                          **May 12, 2020**

Defendant Imad Dawara is currently detained pending trial on ten counts arising out of his alleged participation in setting a building on fire as part of an insurance fraud scheme. He now moves for bail arguing he is neither dangerous nor a flight risk. He also argues in light of the circumstances created by the ongoing novel coronavirus 2019 (COVID-19) pandemic, he should be released because he has underlying health conditions making him a high risk for severe illness. Also, because legal visits are suspended during the COVID-19 pandemic, Dawara argues his release is necessary in preparation of his defense and the restrictions violate his Sixth Amendment right to counsel which can only be remedied by his release. Because the Court finds Dawara is both a danger to the community and a flight risk, Dawara's pretrial detention is proper under the Bail Reform Act. The Court does not find COVID-19 is a compelling reason warranting Dawara's release nor does the Court find Dawara's release is necessary in preparation for his defense. The Court also does not find the suspension of Dawara's legal visits under the current circumstances rises to a Sixth Amendment violation. As a result, the Court will deny the motion without prejudice.

**BACKGROUND**

The event leading to Dawara's indictment occurred on February 18, 2018, when Dawara and his brother allegedly conspired to and did set fire to the building at 239–41 Chestnut Street in

Philadelphia, Pennsylvania. The fire was initiated in the basement of the building where the brothers' business was housed. After the fire, the brothers attempted to collect on their business's insurance policy. Dawara and his brother were then indicted with ten counts arising out of the incident.[1]

After a long investigation, Dawara was arrested on October 18, 2019. The Government moved for pretrial detention. On October 22, 2019, United States Magistrate Judge Timothy R. Rice held a hearing and granted the Government's motion finding Dawara was both a danger to the community and a flight risk. Dawara has been detained since at the Federal Detention Center in Philadelphia, Pennsylvania (FDC Philadelphia). Dawara and his brother are scheduled for trial beginning September 14, 2020.

On February 27, 2020, Dawara and his brother, by separate indictment, were charged with conspiracy to defraud the United States for their alleged conduct in evading assessment of their income tax liabilities from 2015 through 2017. *See United States v. Dawara*, Criminal Action No. 20-104 (E.D. Pa. filed Feb. 27, 2020). The Government again moved for pretrial detention. On April 22, 2020, United States Magistrate Judge Jacob P. Hart granted the motion but granted Dawara leave to reassert his request for pretrial release if he is acquitted or granted bail in this case.

---

[1] Dawara is charged with: Count 1 – conspiracy to commit arson in violation of 18 U.S.C. § 844(n); Count 2 – conspiracy to use fire to commit a federal felony in violation of 18 U.S.C. § 844(m); Count 3 – malicious damage by means of fire of a building used in interstate commerce, aiding and abetting, and willfully causing in violation of 18 U.S.C. § 844(i) and 18 U.S.C. § 2(a)–(b); Counts 4–7 – wire fraud and aiding and abetting in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2; Counts 8–9 – mail fraud and aiding and abetting in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2; and Count 10 – use of fire to commit a federal felony and aiding and abetting in violation of 18 U.S.C. § 844(h) and 18 U.S.C. § 2.

Since Dawara's arrest and the October 22, 2019, detention order much has changed. Due to COVID-19, a novel and highly contagious respiratory virus, Pennsylvania (and the world) has confronted a rapidly changing public health crisis that has reached the scale of a global pandemic. *See WHO characterizes COVID-19 as a pandemic*, World Health Org. (Mar. 11, 2020), https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen. The virus commonly causes fever, coughing, and shortness of breath, amongst a wide range of other symptoms. *See Watch for symptoms*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited May 12, 2020). To date, the virus has infected nearly 1,324,488 people in the United States and resulted in 70,756 deaths. *See Cases of Coronavirus Disease (COVID-19) in the U.S.*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated May 11, 2020). In Pennsylvania, there are 57,154 confirmed cases and 3,731 reported deaths. *See COVID-19 Data for Pennsylvania*, Pa. Dep't of Health, https://www.health.pa.gov/topics/disease/coronavirus/Pages/Coronavirus.aspx (last updated May 11, 2020, 12:00 PM).

Some populations, including the elderly and immunocompromised, are at a higher risk of developing serious complications upon exposure to the virus. The CDC has identified people of any age who have serious underlying medical conditions as those who are also at a higher risk for severe illness. *See People Who Are At Higher Risk*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 12, 2020). High risk underlying medical conditions include chronic lung disease, asthma, serious heart conditions, severe obesity, diabetes, chronic kidney disease undergoing

dialysis, liver disease, and immunocompromised conditions from cancer treatment, smoking, bone marrow and organ transplantation, immune deficiencies, or weakening medications. *See id.*

Because COVID-19 is highly contagious and spreads primarily through person-to-person contact, its existence has dramatically affected all realms of life. Federal, state, and local public health authorities have advised certain precautions be taken to avoid exposure and prevent the spread of the virus. In Pennsylvania, like in many other states, individuals have been directed to stay at home unless engaging in an essential activity or providing life-sustaining or government services. Nonessential businesses have closed their doors, schools have closed for the rest of the academic year, and people are avoiding gatherings of any kind. In this district, the Court has taken significant steps to limit operations to prevent the spread of the virus.

In light of the precautions necessary to prevent the virus's spread, COVID-19 poses a unique challenge to the prison system. *See Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last updated Mar. 23, 2020). Nevertheless, in response to the COVID-19 pandemic, the Bureau of Prisons[2] (BOP) has implemented several protocols to protect the health and safety of the inmates, staff, and general public from the spread of the virus. The BOP's efforts include quarantining new inmates at the facility until they are cleared, screening inmates by health services prior to placement, suspending visits, and significantly decreasing the traffic of individuals entering the facilities. *See BOP*

---

[2] The Bureau of Prisons operates FDC Philadelphia.

4

*Implementing Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 12, 2020).

Legal visits and inmate access to legal counsel is a paramount requirement for the BOP. However, due to the need to mitigate the risk of exposure created by external visitors, the BOP and FDC Philadelphia suspended all legal visits on March 13, 2020. Although the BOP allows for case-by-case accommodations to allow inmates access to legal counsel, there is no record of how this occurs or the standards the BOP applies to approve counsel for an in-person visit. These restrictions have prevented Dawara's attorney from meeting with Dawara since March 13, 2020.

Although COVID-19 appears to be spreading in the community, as of May 11, 2020, there are no positive cases of COVID-19 among inmates at FDC Philadelphia.[3] Also, no inmate has presented any known symptoms of COVID-19 nor has any inmate required testing.

On April 30, 2020, however, the Warden of FDC Philadelphia reported one staff member has tested positive for COVID-19. The staff member has not been in the institution since April 12, 2020; however, FDC Philadelphia did not receive confirmation of the positive test until late April 29, 2020. On May 1, and May 5, 2020, a second and third staff member tested positive for COVID-19. *See* Letter Update, May 5, 2020, ECF No. 41, *Brown v. Marler*, No. 20-1914 (E.D. Pa. filed Apr. 15, 2020). According to reports, FDC Philadelphia is following and implementing all best practices and guidelines for sanitation and prevention of spreading the virus. There have been no other reported cases of COVID-19 in the institution.

---

[3] Although the Court receives reports from the Warden and attorney of FDC Philadelphia regarding whether there are any confirmed cases of COVID-19 and whether any inmates present any symptoms, the parties have been advised of any and all reports on this matter. Further, during the hearing, the parties have acknowledged that this is the status of FDC Philadelphia based on the public record.

On April 15, 2020, Dawara filed the instant motion for bail and asks this Court to review Judge Rice's decision and grant him pretrial release.[4] Dawara first argues he is neither a danger to the community nor a flight risk under the Bail Reform Act. He then argues he should be released because he suffers from chronic kidney stones making him a high risk for severe illness should he contract COVID-19 and because his release is necessary in preparation of his defense. Finally, Dawara argues his pretrial detention violates his Sixth Amendment right to counsel because he cannot meet with his attorney during the pandemic and the violation can only be remedied by his release. The Government opposes the motion.

The Court held a video conference hearing on May 4, 2020. At the hearing, Dawara consented to proceed with the hearing on his motion by video conference and waived his right to an in-person hearing. *See* Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 15002(b)(1)(A), (b)(4), 134 Stat. 281, 528–29 (2020). In support of his release, Dawara proffered substantial pages of evidence including medical records, 23 letters of support from family and community members, a list of family members who are willing to post their homes as collateral, and evidence related to Dawara's relationship with his neighbors and landlord. The Government responded with evidence of Dawara's failing business, threatening behavior to neighbors, and persistent deception of others. The Government also proffered Dawara's medical records from his incarceration at FDC Philadelphia.

---

[4] Dawara also filed several supplemental motions for bail which consisted of additional exhibits to support his original motion. *See* Def.'s Supp. Mots. for Bail, ECF Nos. 44, 45, 49, & 51. The Court construes Dawara's supplemental bail motions as amendments to his original bail motion and has considered the evidence set forth in them in deciding his motion for bail.

**DISCUSSION**

The Court will deny Dawara's motion because his pretrial detention is proper pursuant to the Bail Reform Act and because the circumstances created by COVID-19 do not warrant his release. Because Judge Rice has already determined Dawara shall be detained pending trial, this motion is essentially an appeal from that determination in light of new circumstances. Pursuant to 18 U.S.C. § 3145(b), a district court may review a magistrate judge's decision of pretrial detention. The Court's review is de novo. *See United States v. Delker*, 757 F.2d 1390, 1394–95 (3d Cir. 1985).

Under the Bail Reform Act, a court may order a defendant detained pending trial only if, after a hearing, the court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other persons and the community." 18 U.S.C. § 3142(e)(1). The Government bears the burden of proof and must show either (1) the defendant's dangerousness by clear and convincing evidence or (2) the defendant's flight risk by a preponderance of the evidence. *See United States v. Himler*, 797 F.2d 156, 160–61 (3d Cir. 1986). To determine whether the Government has met its burden, the Court must "take into account the available information concerning" the nature and circumstances of the offenses charged, the weight of the evidence against the defendant, the defendant's history and characteristics, and the nature of any danger he might pose. 18 U.S.C. § 3142(f), (g). "[T]he characteristics that will support pretrial detention may vary considerably in each case, and thus Congress 'has chosen to leave the resolution of this question to the sound discretion of the [courts] acting on a case-by-case basis.'" *Delker*, 757 F.2d at 1399.

The Government has met its burden to show by a preponderance of the evidence that Dawara is a flight risk and by clear and convincing evidence that Dawara is a danger to the

7

community. First, the charged offenses are serious. Based on the Indictment, there is probable cause to believe Dawara has committed conspiracy to commit arson, conspiracy to use fire to commit a federal felony, malicious damage by means of fire of a building used in interstate commerce, wire fraud and mail fraud, and/or aided and abetted the commission of these offenses. *See United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986) (stating an indictment charging the defendant with an offense is sufficient to support a finding of probable cause). If convicted, Dawara faces a mandatory minimum of 17 years' imprisonment with the maximum sentence being 180 years' imprisonment. By conspiring to set and setting the fire in the early morning hours, Dawara and his brother put several lives in danger because the building housed private residences in addition to the businesses and commercial space. The nature and circumstances of Dawara's offenses, which created a danger to the victims in the surrounding community, thus show Dawara's dangerousness. Further, because Dawara potentially faces a significant sentence, and because these are his first criminal charges, he may be more inclined to flee to avoid any prosecution.[5] This factor thus weighs in favor of Dawara's continued pretrial detention.

Next, as for the weight of the evidence, the Government has proffered substantial circumstantial evidence showing Dawara and his brother planned to set the fire to the building that housed their failing business to collect on an insurance policy. The evidence includes the timing of their insurance purchase, the fact that their business was no longer in operation when the fire was set, no other person had keys or access to the building, and the timing of their call to the insurance company after the fire. Further, the Government contends it has video evidence showing

---

[5] Since his original bail hearing, Dawara has been indicted in a second criminal case for tax fraud. *See United States v. Dawara*, Criminal Action No. 20-104 (E.D. Pa. filed Feb. 27, 2020). These new charges potentially lead to additional penalties and add further incentive to flee prosecution. *See United States v. Lacerda*, No. 12-303, 2013 WL 4483576, at *10 (D.N.J. Aug. 19, 2013) (finding defendant's incentive to flee increased by additional criminal charges).

Dawara met the person (allegedly his brother) who set the fire immediately after, and paid for that person's cab ride. While the Government relies largely on circumstantial evidence, it all tends to tie Dawara to the fire or at the very least, shows he met with the arsonist.

Nevertheless, Dawara has proffered evidence undermining the Government's theory of the case. For instance, Dawara proffered emails between his neighbors and city officials in which they attempt to evict the brothers for noise disturbances. He also produced text messages between him and his landlord. To some extent, Dawara's proffered evidence contradicts the Government's theory that Dawara regularly threatened his neighbors and landlord and even suggests others in the building had motive to set the fire. Dawara has also proffered some evidence contradicting the reason the business's insurance had expired and why he purchased insurance only days before the fire. All of this, coupled with his other proffered evidence, tends to show the Government's evidence in this case is weak. Because both parties have proffered evidence regarding the weight of the evidence against Dawara, the Court finds this factor is neutral as to pretrial detention for dangerousness and flight risk. *See United States v. Terry*, No. 18-24, 2018 WL 6504370, at *4 (W.D. Pa. Dec. 11, 2018) (concluding weight of evidence was neutral because both parties produced evidence as to defendant's guilt or innocence).

Turning to Dawara's history and characteristics, the Court finds they weigh in favor of pretrial detention. First, Dawara has international ties and should he flee, the Government would be without recourse to have him returned to the United States. Although Dawara immigrated from Syria nearly 20 years ago, he recently returned to Syria just before his arrest. Upon his arrest, he even maintained his Syrian citizenship, despite his current position that he has no connections with Syria. *Cf. United States v. Kabbaj,* No. 16-365, 2016 WL 11660082, at *14 (E.D. Pa. Sept. 12, 2016) (finding defendant with dual citizenship was not a flight risk because he renounced his

foreign citizenship and had never fled from court proceedings). Dawara attempts to distance himself from Syria by arguing his return there is unrealistic because the country is "war torn and impoverished." *See* Def.'s Ex. T, ECF No. 51-1. His contention that Syria is too dangerous to travel to is undermined by his trip to the country before his arrest.

Second, the Government has also produced evidence suggesting Dawara has a history of fraud and deceit. Dawara has been indicted for conspiracy to defraud the United States by evading his income tax liabilities. He also made false or inconsistent statements with his insurance company, pretrial services, and this Court.[6] For example, in an attempt to protect his wife who is currently being investigated for fraud related to welfare benefits, Dawara asserts his wife lives in Swarthmore, Pennsylvania with him but also lives with his father. However, many of the individuals who wrote character letters for Dawara stated his wife lives only in Swarthmore in subsequent interviews with the Government.

Even more concerning, despite Dawara's proffered 23 letters of support, it appears Dawara's family solicited some of these letters under false pretenses or sought letters from those without sufficient knowledge to speak to Dawara's character. After Dawara submitted the letters with his motion, the Government investigated and interviewed several of the neighbors and community members regarding their letters. At least six of the individuals stated they did not know Dawara but only knew his parents, knew very little of his business or character, or believed they were writing a letter about a different person. Some also discussed the circumstances surrounding

---

[6] In his interview with pretrial services, the Government contends Dawara intentionally made a false statement by characterizing himself as a manager of his nightclub rather than the owner. This fact is relevant to Dawara's tax fraud indictment. Also, in this motion, Dawara originally contended he suffers from asthma although he has not been diagnosed or treated for asthma. *See* Def.'s Ex. P, Q, & R (medical records from 2017–2019); Gov't Ex. A (FDC medical records). The Government also contends Dawara received Medicaid assistance to pay for his medical conditions despite having the financial means that would disqualify him from such benefits.

their writing of the letters, stating two women (Dawara's family members) came to their house and either told them what to write or required them to write the letter immediately.

Third, Dawara has significant familial support and financial wealth, which increase his ability to flee in light of his incentive to do so and recent travel there. Although several of Dawara's family members support him and reside within the district, these strong familial ties, and their somewhat fraudulent conduct in securing the community support letters, increase Dawara's ability to flee to avoid prosecution. The Government has even stated it is investigating some of Dawara's family members for their own allegedly fraudulent conduct. Also, despite Dawara's contention that he is without sufficient wealth to flee, the fact that he has argued financial desperation was not a motive for the crimes in this case and his indictment for avoiding tax liabilities suggest otherwise.

Although Dawara does not have a criminal history or a history of avoiding prosecution, the Government's proffered evidence shows Dawara has a history of engaging in fraudulent and deceitful behavior, some allegedly amounting to criminal conduct which has led to his prosecution in this case and the tax fraud case. This behavior suggests Dawara is capable of engaging in such conduct in this case. Further, his ties with Syria, his recent travel there, and his family's conduct to assist him with questionable methods, all weigh in favor of finding him a flight risk. This factor, however, is neutral regarding Dawara's dangerousness.[7]

Finally, as for the danger Dawara might pose upon his release, the Court finds his dangerousness and flight risk is substantial. Dawara's alleged conduct was not only part of an

---

[7] The Court notes the Government proffered evidence that Dawara threatened his landlord in the context of his eviction from the building. *See* Gov't Ex. B (notice of eviction and reference to threats made). Dawara has rebutted this with evidence of text messages showing he and his landlord communicated regularly without threats.

insurance fraud scheme, but also put many lives in danger. As a result of the fire, at least one firefighter was injured and several private-owned pets were killed. Although no people died in the fire, it created a substantial risk of loss of life and Dawara knew as much based on his familiarity with the building since 2012. Many of the victims of the fire will serve as witnesses in this case and Dawara has significant motive to retaliate against these victims upon his release. Although Dawara contends he knows the witnesses and they do not fear him, but rather hate him, the characterization of their emotional state does little to diminish his motive to retaliate. Considering Dawara's family members have gone to great lengths to influence the people who wrote character letters for him, the Court shares the Government's concern that Dawara and his family could similarly attempt to influence the witnesses should he be released. As a result, this factor weighs in favor of finding Dawara dangerous and a flight risk warranting his continued detention.

In sum, the Government has met its burden to show by a preponderance of the evidence that Dawara is a flight risk and by clear and convincing evidence that he is a danger to the community. The Court therefore finds there is no condition or combination of conditions of release that could reasonably assure the safety of the community or Dawara's appearance for trial were he to be released. His detention pending trial is thus appropriate and the Court will therefore deny the motion as to Dawara's dangerousness and flight risk.

Next, there is no compelling reason, including the existence of COVID-19, warranting Dawara's release. When an individual is detained pending trial, the Court may temporarily release the individual if "such release is necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). While the impact of COVID-19 is concerning, the existence of the virus alone is not a compelling reason to release Dawara. *See United States v. Penaloza*, No. 19-238, 2020 WL 1555064, at *2 (D. Md. Apr. 1, 2020) ("[T]he mere presence of

the virus, even in the detention setting, does not translate to the release of a person accused."); *cf. United States v. Raia*, 954 F.3d 594, 594 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, even considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Not only is the existence of COVID-19 insufficient on its own to warrant Dawara's release, Dawara points to no other compelling reason to conclude he is at an increased risk of developing severe symptoms from the virus or that his release will reduce that risk. Dawara is 39 years old and, upon his admission to FDC Philadelphia, stated he was in good health. *See* Gov't Ex. A.

Dawara argues his chronic kidney stones place him at a heightened risk of severe illness of COVID-19, but he has not proffered evidence that this condition is high risk. In fact, the CDC's current list of high risk underlying medical conditions does not reference kidney stones. There is also no evidence that he is not receiving treatment for his kidney stones at FDC Philadelphia. Rather, it appears FDC Philadelphia is providing treatment for medical conditions as the Government has provided medical records of Dawara's treatment since his arrest, *see* Gov't Ex. A, and Dawara's brother recently received emergency surgery for kidney stones while detained at FDC Philadelphia.

As for the conditions of Dawara's detention, he is currently detained at FDC Philadelphia, which, to date, has reported no cases of COVID-19 amongst inmates. The BOP has continually monitored and implemented measures in response to COVID-19 to protect inmates, staff, visitors, and members of the public. As a result, Dawara's generalized concerns regarding COVID-19 do not warrant his release as a compelling reason pursuant to § 3142(i). *See United States v. Deshields*,

No. 19-99, 2020 WL 2025377, at *3 (M.D. Pa. Apr. 27, 2020) (concluding existence of COVID-19 was not a compelling reason on its own to grant pretrial release).

The Court also concludes, contrary to Dawara's argument, his release is not necessary for preparation of his defense. "At a minimum, detained defendants seeking temporary release under section 3142(i) for 'necessary' trial preparations must show why less drastic measures—such as requests to continue the trial date (consistent with the Speedy Trial Act) or alternative means of communication (including in writing or by available remote conferences)—would be inadequate for their specific defense needs." *United States v. Coggins*, No. 20-33, 2020 WL 2217259, at *6 (M.D. Pa. May 7, 2020) (citations omitted). Dawara argues his release is necessary for preparation of his defense because his case involves substantial discovery subject to a protective order which he cannot review without his attorney. The Court recognizes the difficulty the current operations at FDC Philadelphia place on Dawara's ability to review discovery. Nevertheless, the Court is not persuaded this warrants his release at this time.

In light of the current operations at FDC Philadelphia, the Government has agreed in limited circumstances to allow Dawara's counsel to provide certain discovery to Dawara in modification of the protective order. *See* Def. Ex. O (email exchange regarding discovery and limitations on legal visits at FDC Philadelphia). Even though the parties' agreement was limited, the exchange is evidence they can resolve any forthcoming issues regarding the vast amounts of discovery subject to the protective order and the current limitations on Dawara's ability to review such discovery. Also, while there is voluminous discovery in this case, there is no evidence Dawara's need to consult with counsel on this discovery is urgent considering his trial is scheduled for September 14, 2020. *See United States v. Veras*, No. 19-10, 2020 WL 1675975, at *7 (M.D. Pa. Apr. 6, 2020) ("[The defendant] has not suggested that his situation with regard to consultation

with counsel is an urgent one or otherwise distinguishable from that facing other pretrial detainees at this time."). Therefore, the Court concludes Dawara's release is not necessary for preparation of his defense. *See Deshields*, 2020 WL 2025377, at *7 (finding release was not necessary for defendant's defense because he had access to video conferences and phone calls with attorney).

Turning to Dawara's Sixth Amendment claim, the suspension of his legal visits in the midst of this pandemic does not violate his right to counsel. "[P]retrial detainees have a constitutionally protected right to the effective assistance of counsel." *Cobb v. Aytch*, 643 F.2d 946, 957 (3d Cir. 1981). This right requires pretrial detainees to "have a reasonable opportunity to seek and receive the assistance of attorneys. Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974). A pretrial detainee's right to counsel is infringed when prison regulations unreasonably burden or significantly interfere with the detainee's access to counsel. *See Benjamin v. Fraser*, 264 F.3d 175, 187 (2d Cir. 2001).[8]

Although FDC Philadelphia has suspended all legal visits since March 13, 2020, Dawara's inability to meet with his attorney in person does not unreasonably burden his access to counsel. Considering the measures necessary for the BOP to prevent spread of COVID-19 in its institutions, the suspension of legal visits could hardly be viewed as unreasonable. *See United States v. Landji*, No. 18-601, 2020 WL 1674070, at *6 (S.D.N.Y. Apr. 5, 2020) ("[The court] cannot find that BOP's decision to suspend all legal visits for 30 days is unreasonable in light of the global pandemic and the threat it poses to inmates, residents of New York City, and the nation at large.").

---

[8] Although there is no Third Circuit precedential opinion providing guidance on how to analyze whether a pretrial detainee's right to counsel has been violated, the Court is persuaded by the Second Circuit's guidance on this point. *See Benjamin*, 264 F.3d at 186 ("[P]retrial detainees need access to the courts and counsel . . . to defend against the charges brought against them." (citations omitted)).

15

Even without in-person visits, the BOP offers case-by-case approval for legal visits and ensures confidential legal calls are available to inmates to preserve the right to counsel. *See BOP Implementing Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 12, 2020). Dawara's attorney states he has not met with Dawara since shortly before March 13, 2020, however, there is no evidence suggesting he cannot apply for a case-by-case approval for an in-person visit or cannot consult with Dawara over the phone. As a result, the Court concludes the suspension of Dawara's legal visits does not rise to a constitutional violation. *See Landji*, 2020 WL 1674070, at *6 (finding no Sixth Amendment violation due to BOP's decision to suspend legal visits during pandemic).

**CONCLUSION**

In conclusion, Dawara's pretrial detention is proper pursuant to the Bail Reform Act. The Government has proven by a preponderance of the evidence that Dawara is a flight risk and by clear and convincing evidence that he is a danger to the community. The Court therefore finds there is no condition or combination of conditions of release that will reasonably assure the safety of the community or his appearance for trial were he to be released. Further, pursuant to § 3142(i), Dawara's generalized concern regarding COVID-19 does not constitute a compelling reason for his release and his release is not necessary in preparation of his defense. Finally, the Court finds the suspension of Dawara's legal visits does not rise to a Sixth Amendment violation. Accordingly, the Court will deny Dawara's motion without prejudice to reassert should circumstances created by COVID-19 or Dawara's access to counsel change.

An appropriate order follows.

BY THE COURT:


 /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.