# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **Criminal Nos. 19-414-01 and 20-104-01** |
| **IMAD DAWARA** | : | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

Defendant Imad Dawara seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). This motion should be denied, given that the defendant does not present an "extraordinary and compelling reason" allowing consideration under the statute for this exceptional remedy, and in any event, release is not warranted upon consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), including the severity of his criminal offenses and their profound effect on the victims, who understandably state vehement opposition to Dawara's motion.

Specifically, the motion does not present an "extraordinary and compelling reason" for relief because: (1) Dawara's medical conditions are being properly treated in prison; (2) his claim that the institution is not providing him adequate medical care is not properly before this Court in a motion for compassionate release; (3) the claim that his family is struggling without him at home and he is needed to provide help and support does not present a compelling basis for relief.

## I.  STATEMENT OF FACTS

### A.  Criminal Conduct.

The following statement of facts was presented at the time Dawara entered a guilty plea.

From around December 2012 until February 18, 2018, Imad and Bahaa Dawara owned and operated various restaurants and entertainment establishments at 239-241 Chestnut Street, with the Revolution Diner occupying the space at the time of the arson. Imad Dawara and Bahaa Dawara then set fire to this property.

In the early morning hours of February 18, 2018, Bahaa Dawara used gasoline to set fire to the basement of the Revolution Diner, knowing that people were sleeping in the floors above in their homes, while Imad Dawara stayed behind in a nightclub deliberately constructing his alibi, all according to their plan.

The fire raged for hours, warranting a four-alarm response from the Philadelphia Fire Department that lasted throughout the day. The fire resulted in the injury of two firefighters, the complete destruction of a five-level multipurpose building that included private residences and a business, smoke and water damage to adjacent buildings, the death of a resident's pets, millions of dollars in loss to the victims and the City of Philadelphia, and the significant risk of loss of life.

Due to the structural damage to buildings, the Philadelphia Police Department closed the 200 block of Chestnut Street for months until Philadelphia License & Inspection declared it safe.

The Dawara brothers' dangerous and malicious action was based, in part, on their desire to collect an insurance policy that they purchased for the property just 16 days before the fire, and as retribution against the landlord and other tenants of the building who had sought to get them evicted.

Imad Dawara also participated in other frauds. For some time, he and his brother used nominee entities to conceal income and assets from the IRS. They diverted gross receipts from their businesses to an entity called IB Management, that did not report any of the cash deposits.

In May 2016, Imad Dawara and Bahaa Dawara purchased a nightclub, "BSide Complex," located on Delaware Avenue in Philadelphia. Although Imad and Bahaa co-owned and operated this nightclub, the tax forms associated with B-Side Complex listed other individuals' names as the owners. Initially, Imad and Bahaa Dawara put the ownership of the nightclub under Noche, LLC, in the name of an employee of the nightclub who had zero ownership interest. In 2017, they changed the ownership of the nightclub to their business entity, Baba. Again, Imad and Bahaa listed a nightclub employee as the 100 percent shareholder of Baba. That employee also had no ownership interest in the nightclub. Imad and Bahaa Dawara failed to report the ordinary income of the nightclub, owned by Baba, as flow income on their personal tax returns. All of this tax fraud concerned the years 2015 through 2017.

Finally, from in or about November 1, 2016, through in or about September 18, 2019, the defendant, along with his wife, Abeer Naim, made false representations in order to unlawfully received Medicaid benefits of $15,137.52.

**B.     Procedural History.**

On July 18, 2019, the grand jury for this district returned an indictment in

Criminal No. 19-CR-414 that charged Dawara and his co-defendant and brother, Bahaa

Dawara, with conspiracy to commit arson, in violation of 18 U.S.C. § 844(n) (Count

One); conspiracy to use fire to commit a federal felony, in violation of 18 U.S.C.

§ 844(m) (Count Two); malicious damage by means of fire of a building used in

interstate commerce, in violation of 18 U.S.C. § 844(i) (Count Three); wire fraud, in

violation of 18 U.S.C. § 1343 (Counts Four through Seven); mail fraud, in violation of

18 U.S.C. § 1341 (Counts Eight and Nine); use of fire to commit a federal felony, in

violation of 18 U.S.C. § 844(h) (Count Ten); and, aiding and abetting, in violation of

18 U.S.C. § 2. The charges involved the Dawara brothers' agreement to commit arson to

destroy the building located at 239-241 Chestnut Street in Philadelphia on February 18,

2018.

On February 27, 2020, the grand jury returned a one-count indictment in Criminal

No. 20-CR-104 that charged Dawara with conspiracy to defraud the United States, in

violation of 18 U.S.C. § 371. The charge involved the Dawara brothers' agreement to

knowingly defraud the United States by failing to accurately report and pay to the

Internal Revenue Service federal income taxes owed for the years 2015, 2016, and 2017.

On February 25, 2021, in Criminal No. 19-CR-414, Dawara pleaded guilty

pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) to

Count One (conspiracy to commit arson) and to Count One in Criminal No. 20-CR-104.

Pursuant to the plea agreement, Dawara also stipulated that, from in or about

- 4 -

November 1, 2016, through in or about September 18, 2019, he, along with his wife, Abeer Naim, violated 18 U.S.C. § 1035, relating to their involvement with the unlawful receipt of $15,137.52 in Medicaid benefits.

On June 22, 2021, pursuant to the plea agreement, this Court sentenced Dawara to a total of 108 months' imprisonment, to be followed by a total of five years of supervised release, and to pay $22,214,945.52 in restitution and a $200 special assessment. ECF No. 94. This Court specifically ordered Dawara to pay $22 million in restitution with regard to Criminal No. 19-414, jointly and severally with Bahaa Dawara, and $199,808 in restitution regarding Criminal No. 20-104. This Court also ordered Dawara to pay $15,137.52 in restitution relating to the Medicare fraud scheme with his wife.

Dawara is a federal inmate currently assigned to FCI Fort Dix, with a minimum release date of July 21, 2026. Dawara to date has served three years and nine months of his sentence, and has credit for good conduct time of approximately 6 months. Bureau of Prisons ("BOP") records reflect that Dawara has not committed any disciplinary infractions during his time in custody.

C.      **Request for Compassionate Release**.

Dawara seeks relief citing ongoing medical issues, family circumstances, and his efforts toward his rehabilitation. Dawara also claims that he is being subjected to

"abhorrent prison conditions" because BOP officials have not responded to "his continued pleas for medical help." Motion, p. 5.

On or about March 9, 2022, Dawara submitted a request to the warden for support for compassionate release. The request was based on a "terminal medical condition" of having kidney stones. On or about March 24, 2022, the warden denied this request.

On or about May 17, 2023, Dawara submitted to the warden a second request for compassionate release. Motion, Exh. A. That request indicated that Dawara suffered from a "Debilitated Medical Condition." *Id*., p. 2. In particular, Dawara claimed that he was suffering from "numerous medical and mental health issues" that elevated his risk to infectious diseases in a prison environment. *Id*. Dawara also claimed that his minor child and wife were "are struggling to survive" in his absence and they need him to return home now. *Id*. Dawara further alleged that he was suffering from kidney stones that required additional surgery; he needed surgery on his left eye; and he required therapy for his back due to a disc issue. *Id*. On June 29, 2023, the warden responded to this request and advised Dawara that officials previously addressed his request and he could appeal his decision to the courts. *Id*.

On July 5, 2023, Dawara filed the present *pro se* Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 108. The government does not dispute that more than 30 days have passed since Dawara's request to the warden, and he therefore has satisfied the administrative exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A).

The government obtained Dawara's medical records for the past three years from BOP, which it files under seal as "Exhibits A, B, and C" along with this response. The records reveal that Dawara is 43 years old and presents significant medical conditions. Importantly, however, the records make clear that BOP at this time is sufficiently managing those conditions.

In particular, Dawara has a long history of kidney stones and has had 17 procedures to treat them. Dawara currently seems to be doing well with respect to this issue. A CT scan on February 17, 2023, showed that Dawara has a very small non-obstructing calculi, but there was no acute obstruction of the renal collecting system. *See* Exh. A, at p. 2. The report submitted by an outside consultant dated November 11, 2022, indicates that Dawara only has a very small stone that would not cause him pain. *Id.* at p. 403.

BOP records also state that Dawara has a history of hernias, but, here too, he seems to be doing well on this issue. The same February 17, 2023, CT scan showed only a small umbilical hernia. *See* Exh. A, at p. 2. Dawara also presents depression, anxiety, glaucoma, hyperlipidemia, vitamin D deficiency, and hypothyroidism. Dawara also claims that he has "blood clots" in his left arm. Motion, p. 6. However, BOP records only reflect that Dawara on June 29, 2023, made a complaint that he had bruising on his left forearm. Exh. A, at pp. 17-18.

Dawara's most serious condition is chronic ischemic heart disease. On June 11, 2023, Dawara was treated in the emergency room and he thereafter received two

coronary artery stents. He currently is scheduled for an echo cardiogram on August 31, 2023.

Dawara contends that the institution is neglecting his numerous medical conditions and BOP provides "appropriate care" only in emergency situations, providing anecdotes regarding other inmates at other institutions. BOP records, however, show that, at this time, all of Dawara's reported conditions appear well-controlled and managed by the institution. Dawara is fully ambulatory and engages in all normal activities of daily living (ADLs).[1]

Dawara also seeks compassionate release based on alleged family circumstances. He alleges that his wife and his two sons are struggling at home in his absence. Motion, p. 21. He also contends that his family receives no income because his wife is unable to work because of a spinal condition. *Id*. As will be discussed, he does not present a sufficient basis for relief in this regard as well.

## III.   DISCUSSION

### A.   Governing Law.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1)  in any case—

---

[1] BOP records also reflect that Dawara refused the COVID vaccine.

(A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i)  extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."[2]

---

[2] The inmate does not have a right to a hearing. Federal Rule of Criminal Procedure 43(b)(4) states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." *See Dillon v. United States,* 560 U.S. 817, 827-28 (2010) (observing that, under Rule 43(b)(4), a defendant need not be present at a proceeding under 18 U.S.C. § 3582(c)(2)).

Further, this Court does not have authority to grant a transfer to home confinement, or review BOP's administrative decision regarding that issue. *See* 18 U.S.C. § 3621(b) (BOP's designation decision is not subject to judicial review); *see also, e.g.*, *United States v. Aguibi*, 858 F. App'x 485, 486 n.2 (3d Cir. 2021) (not precedential; per curiam) ("To the extent that Aguibi requested a transition to home confinement, the Bureau of Prisons has the sole authority to place a prisoner in home confinement."); *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021); *United States v. Houck*, 2

*continued* . . .

The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

This policy statement is not currently binding, as it refers to motions filed by the Director of BOP and has not been updated since passage of the First Step Act of 2018, which afforded authority for defendants to directly file motions. *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). However, courts routinely continue to look to the definitions provided by the Sentencing Commission for guidance. The Third Circuit explained:

> [A]lthough the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons. "It is a commonplace of statutory interpretation that 'Congress legislates against the backdrop of existing law." *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019) (*quoting McQuiggin v. Perkins*, 569 U.S. 383, 398 n.3 (2013)). Because Congress reenacted the compassionate-release statute without any alterations to the phrase "extraordinary and compelling reasons," it was reasonable for the court to conclude that the phrase largely retained the meaning it had under the previous version of the statute.

*Andrews*, 12 F.4th at 260. *See also United States v. Jefferson*, 2021 WL 4279626, at *2 (3d Cir. Sept. 21, 2021) (not precedential) ("we also explained in *Andrews* that it is not error for a district court to consider the policy statement in its 'extraordinary and

---

F.4th 1082, 1085 (8th Cir. 2021); *United States v. Gray*, 2020 WL 6822949, at *2 (E.D. Pa. Nov. 20, 2020) (Sanchez, C.J.).

compelling' analysis, even if the policy statement is not ultimately binding on the court.").

This approach is particularly appropriate where, as here, the motion primarily rests on medical grounds and family circumstances, and the Commission has stated a well-accepted definition of the circumstances that qualify as extraordinary in both regards. *See United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (while the Fourth Circuit also holds that "§ 1B1.13 is not applicable to *defendant-filed* motions under § 3582(c)," the court recognizes that "it defines, in the medical context, the same substantive term that applies to *BOP-filed* motions. One might reasonably believe therefore that the term 'extraordinary and compelling reasons' will be defined the same for *defendant-filed* motions.").[3]

---

[3] On April 27, 2023, acting pursuant to the authority provided in 28 U.S.C. § 994(t), the Sentencing Commission promulgated proposed amendments to the guideline policy statement addressing compassionate release motions, U.S.S.G. § 1B1.13. *See* Amendments to the Sentencing Guidelines, available at *https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf*, at pages 1-13. The proposed amendments suggest modified definitions of qualifying circumstances with regard to medical, family, and other bases.

These proposals are not currently in effect. Pursuant to the procedure set forth in 28 U.S.C. § 994(p), the proposals were submitted to Congress, which is afforded time to reject or alter the proposals; absent action by Congress, the amendments will take effect on November 1, 2023. At present, they are without force. Courts are required to apply the version of the Guidelines in effect at the time of sentencing. *See* 18 U.S.C. 3553(a)(4)(A)(ii); U.S.S.G. § 1B1.11(a). *See also United States v. Jacobs*, No. 09-141, ECF 78 (May 1, 2023) (Schiller, J.) (stating that the new proposed amendment is not in effect). In any event, none of the suggested changes would affect the analysis presented here.

In application note 1 to the policy statement, the Commission defines the

"extraordinary and compelling reasons" that may justify compassionate release as

follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)    Medical Condition of the Defendant.—
>
>     (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>     (ii)    The defendant is—
>
>         (I)    suffering from a serious physical or medical condition,
>
>         (II)    suffering from a serious functional or cognitive impairment, or
>
>         (III)    experiencing deteriorating physical or mental health because of the aging process,
>
>     that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B)    Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C)    Family Circumstances.—
>
>     (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *See, e.g.*, *United States v. Hampton*, 985 F.3d 530, 533 (6th Cir. 2021); *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *United States v. Neal*, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020) (Gallagher, J.); *United States v. Adeyemi*, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020) (Kearney, J.). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D. N.M. 2019) (Johnson, J.) (citations omitted).[4]

## B. Relief is Not Warranted on Medical Grounds.

Dawara does not present an "extraordinary and compelling reason" allowing consideration for compassionate release. The government recognizes that one of Dawara's medical conditions, chronic ischemic heart disease, is serious, but at this time,

---

[4] The statute provides that rehabilitation alone is not a basis for compassionate release. 28 U.S.C. § 994(t). *See United States v. Claudio*, 2022 WL 1623650, at *3 (E.D. Pa. May 23, 2022) (Kearney, J.) ("[The defendant's rehabilitation does not constitute an extraordinary and compelling reason for release. We commend [him] for his efforts towards rehabilitation. But we are not a parole board reducing sentences simply for good behavior while incarcerated; we must also find extraordinary and compelling reasons for release.").

the institution is adequately treating this condition. *See United States v. Perez-Rodriguez*, 2023 WL 4306673, *6 (E.D. Tex. June 30, 2023) (defendant's six heart stents, standing alone, were not sufficient grounds for compassionate release); *United States v. Reed*, 464 F. Supp.3d 854, 861 (E.D. La. 2020) (cardiac and other medical conditions that were in existence prior to incarceration, and where defendant received cardiac stents during incarceration, were not sufficient to warrant compassionate release); *United States v. Trevino*, 2021 WL 4453587, *5 (E.D. Tex. Sept. 29, 2021) (denial of compassionate release motion where defendant reported coronary artery disease, a bladder tumor, and other conditions that did not constitute "extraordinary and compelling reasons"). *See also United States v. Frost*, 2020 WL 3869294, *4 (D.S.D. July 9, 2020) (defendant suffered from cardiomyopathy, severe coronary artery disease, severe systolic heart failure, Type 2 diabetes mellitus, and various other medical conditions not entitled to relief when considering all factors for compassionate release). *Compare United States v. Bess*, 455 F. Supp. 3d 53 (W.D.N.Y. 2020) (granting compassionate release during pandemic to 64-year-old inmate who suffered from congestive heart failure, coronary artery disease, severely depressed ventricular function, and diabetes; defendant underwent open-heart triple-bypass surgery and multiple surgeries to implant cardiac defibrillator); *United States v. Patel*, 2020 WL 3187980, *1 (D. Conn. June 15, 2020) (granting compassionate release to 73-year-old defendant during pandemic, prior to vaccine availability, who suffered from chronic ischemic heart disease, hypertension, Type 2 diabetes, and various other medical conditions).

The record here shows that, in June 2023, Dawara was first diagnosed with chronic ischemic heart disease for which he was treated in a hospital emergency room and thereafter received two coronary artery stents. By his own admission, Dawara received prompt care at that time when he was taken to the hospital by ambulance for diagnosis and treatment. He also is scheduled for a follow-up echo cardiogram at the end of August 2023. Notably, Dawara does not allege that he would receive more comprehensive care and treatment outside of BOP custody for this condition.

Dawara also reports a variety of other medical conditions, that are not as serious, for which he is receiving treatment and that otherwise are being managed during his incarceration. In particular, Dawara suffers from chronic kidney stones for which he underwent numerous procedures. Dawara continues to receive treatment for this condition. Despite these and other reported medical conditions, and as explained above, BOP is managing these conditions while Dawara remains in custody. Numerous cases hold that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *See, e.g., United States v. Jennings*, 2023 WL 5017971, *3 (E.D. Va. Aug. 7, 2023), citing *United States v. Ayon-Nunez*, 2020 WL 704785, *2-3 (E.D. Cal. Feb. 12, 2020). *See also United States v. Stewart*, 2023 WL 167249, *3 (E.D. Wis. Jan. 12, 2023) (same); *United States v. Patterson*, 2022 WL 16838808, *5 (S.D. Cal. Nov. 9, 2022); *United States v. Ornelas*, 2022 WL 16639294, *2 (E.D. Cal. Nov. 2, 2022).

Dawara has not sufficiently demonstrated that the BOP cannot adequately treat his current medical conditions while incarcerated. Medical records show that Dawara

receives regular medical care, medications, and other treatment for his medical issues. Dawara is 43 years old, and he is not suffering from a terminal illness. He does not report severely declining health related to the aging process. Nor does Dawara report that he currently suffers from other serious conditions, such as cancer, diabetes, morbid obesity, or liver disease.[5] There also is no suggestion that Dawara is unable to care for himself during his incarceration.

Further, Dawara presents general objections regarding the extent and pace of his medical care, but that is not a proper issue for compassionate release at this time. It is apparent that, at present, he does not present "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. note 1(A). His objection belongs in the administrative process. There is an established administrative process for an inmate to present complaints, including the option for appeal to higher authorities in BOP. Dawara has not availed himself of this process to present any complaints about his medical treatment. *United States v. Grant*, 2022 WL 558347, at *5 (E.D. Pa. Feb. 24, 2022) (Sanchez, C.J.) (complaints by pregnant inmate regarding prison conditions should initially be presented in an administrative forum, and not in a motion for compassionate release). *See also*

---

[5] Dawara alleges in his motion that "his medical records show references to bladder cancer, which no physician has ever discussed with him." Motion, p. 17. However, Dawara's BOP medical records do not indicate any diagnosis of bladder cancer.

*United States v. Williams*, 2021 WL 2400860, at *4 (W.D. Wash. June 11, 2021) (Jones, J.) ("if inadequate medical care is an issue, Mr. Williams can pursue available administrative means to address his issues."); *United States v. Pigford*, 2023 WL 2285825, at *4 (E.D. Pa. Feb. 28, 2023) (Kearney, J.).

In *United States v. Miller*, 2021 WL 2711728, at *3 (N.D. Cal. July 1, 2021), Judge Charles Breyer, a longtime member of the Sentencing Commission, explained that the compassionate release guideline "refers to medical conditions that, by their nature, cannot be treated effectively in prisons. It does not encompass medical conditions that are treatable in prison, even when treatment appears to be inadequate. . . . Mr. Miller has alternative avenues to obtain improved medical care. Prisoners routinely bring constitutional claims based on inadequate medical care. . . . Mr. Miller's argument that inadequate medical care makes him eligible for compassionate release under § 3582(c)(1)(A) . . . suggests that Congress intended that statute to serve as an end-run around this established framework. Not so."

The administrative remedy process is set forth in 28 C.F.R. § 542.10 *et seq*. These BOP regulations provide for an expedited response to administrative requests "determined to be of an emergency nature which threatens the inmate's immediate health or welfare." 28 C.F.R. § 542.18. Under the Prison Litigation Reform Act, an inmate filing a prison-conditions lawsuit must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). These procedural rules are based on the Supreme Court's consistent recognition that courts are "ill equipped" to deal with problems of prison administration. *Procunier v. Martinez,* 416

U.S. 396, 405 (1974). "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Accordingly, Dawara's claim that BOP is neglecting his "numerous medical problems" is not properly before this Court in the context of the present motion.[6]

### C.    Dawara's Alleged Family Circumstances Do Not Provide a Basis for Compassionate Release.

Dawara also seeks release based on family circumstances. Dawara contends that he must return home to his wife and two sons, who are 12 and 15 years old, to provide for their care and financial support. Motion, pp. 21-22. In particular, Dawara contends that his wife is unable to work because she suffers from spinal conditions and the family

---

[6] As noted earlier, on April 27, 2023, the Sentencing Commission promulgated proposed amendments to the guideline policy statement regarding compassionate release, that are not yet in effect. The policy statement as amended would present the same definition of qualifying medical circumstances, that is, a terminal condition or one that that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. The proposal also adds this circumstance as extraordinary: "The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." The defendant has not shown that he is at risk of serious deterioration in health without particular medical treatment he is not receiving. Nor has he pursued the proper course for challenging BOP's assessment of the necessary treatment at this time.

income is zero. *Id.*, p. 21. As a result, Dawara alleges that his family receives food stamps and "social aid." *Id.* Dawara further alleges that one son suffers from anxiety and depression due to Dawara's incarceration. *Id.* at 22. These arguments, however, do not establish a sufficient basis for compassionate release here.

Needless to say, family members of a defendant always unfortunately suffer from an offender's decision to engage in criminal acts. But under the advisory guideline, extraordinary circumstances only exist where the defendant's spouse is incapacitated, either to take care of herself or of minor children.

"To prove incapacitation, a defendant must establish a person is 'completely disabled' or unable to 'carry on any self-care and [are] totally confined to a chair or bed.' . . . Moreover, it is not enough to show a potential caregiver is merely 'inconvenienced' by the childcare or 'somewhat sick.'" *United States v. Rooks*, 2022 WL 267899, at *6 (E.D. Pa. Jan. 28, 2022) (Kenney, J.) (citations omitted).

Dawara's motion does not establish that Dawara's wife is completely disabled, nor that she is unable to carry on any self-care or is totally confined to a chair or bed. The medical records he attaches show only that she presents "mild degenerative disc disease."

Importantly, Dawara's family circumstances do not appear to have changed since his arrest in this case. For example, since his arrest, Dawara's wife and two sons have been residing at the home of Dawara's father in Delaware County, Pennsylvania. PSR ¶¶ 112, 116. They reside at that location with Dawara's mother and father. *Id.* Despite the medical issues with her back, Dawara's wife helps take care of his parents. *Id.*, ¶ 112. The PSR also reports that Dawara's wife is a homemaker and she has never had a job. *Id.*

Under these circumstances, it is not reasonable to conclude that Dawara's wife is disabled, or is the only available caretaker either for herself or her children. While Dawara's desire to support and care for his wife and sons is commendable, it does not provide a basis for this Court to grant compassionate release.

### D.      Consideration of 18 U.S.C. § 3553(a) Factors.

For all of these reasons, compassionate release is not warranted here. Further, even if Dawara presented a basis for consideration (which he does not), relief should be denied. This Court must then consider all pertinent circumstances, including the 3553(a) factors, and possible danger to the community. *See United States v. Doe*, 833 F. App'x 366 (3d Cir. 2020) (*per curiam*) (not precedential) (summarily affirming the denial of compassionate release, in a case in which the defendant presented medical risk, upon holding that the district court did not abuse its discretion in considering the nature of the offense, the defendant's history, and the status of the virus at the facility); *United States v. Bullock*, 833 F. App'x 934 (3d Cir. 2021) (*per curiam*) (not precedential) (granting motion for summary affirmance of denial of compassionate release, as the district court did not abuse its discretion in denying relief for medically vulnerable inmate upon considering the 3553(a) factors, including the substantial time remaining to be served on the sentence and the defendant's criminal history and institutional infractions).

Consideration of the Section 3553(a) factors here does not support compassionate release. As noted above, Dawara is 43 years old. To date, he has served only about four years of his nine-year sentence. His scheduled release date currently is July 21, 2026. Dawara fails to demonstrate how release, 45 months into a 108-month sentence for an

extremely serious arson offense and tax offense reflects the seriousness of the offenses, promotes respect for the law, and provides just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2)(A).

Dawara and his brother engaged in a callous, dangerous plan to commit arson that resulted in the injury of two firefighters, the complete destruction of a five-level multi-purpose building that included private residences, the death of a resident's pets, and the significant risk of loss of life. As a result of the fire that the brothers' maliciously set, more than 160 people were displaced, the 200 block of Chestnut Street in Center City Philadelphia was closed for months, residents lost their homes and all their personal belongings, and businesses were permanently shuttered. This conduct resulted in losses of more than $22 million for which this Court ordered restitution. The record here also shows that Dawara and his brother committed this violent act out of sheer greed to collect on an insurance policy they purchased for the property just 16 days before the fire and as retaliation against the landlord and other tenants of the building who sought to get the Dawara brothers evicted. Dawara's greed also was apparent in his tax offenses against the government by evading the assessment of his income tax liabilities from 2015 to 2017 and his false statements to unlawfully receive Medicaid benefits. These offenses showed Dawara's brazen willingness to commit crimes – from fraud to arson – to profit by any means necessary.

Early release in this case would not remotely achieve the purposes of sentencing, as reflected in the impassioned statements of victims of the crimes. The government provided notice of the present motion to the arson victims. To date, five victims

responded by email and vehemently opposed the motion. In their responses, the victims explained the emotional trauma and pain they continue to suffer from the fire. One victim specifically noted "[I] still have nightmares about the fire to this day and the psychological pain [the Dawara brothers] inflicted on me cannot be undone." Another victim noted that "[t]he heinous act of deliberately setting fire to my property not only caused irreparable damage to my home but also inflicted emotional trauma on me, my co-workers and close neighborhood friends." Another victim noted that "[e]ven returning to our home didn't end the residual trauma we continue to endure. Every day we are reminded of the arson event by seeing the vacant lot next door where a beautiful, historic residential building once stood . . . a building that was home to some of the closest friends we have in Philly. They are no longer there."

A consideration of the factors above shows that release at this point is inappropriate based on the offenses of conviction, Dawara's managed medical condition, and the amount of time remaining on his sentence. In sum, upon consideration of all pertinent factors, the motion for compassionate release should be denied.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney


*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals


*/s Joseph F. Minni*
JOSEPH F. MINNI
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading has been served by first-class mail, postage prepaid, upon:

> Mr. Imad Dawara
> Reg. No. 69939-066
> FCI Fort Dix
> P.O. Box 2000
> Joint Base MDL, NJ  08640

*/s Joseph F. Minni*
JOSEPH F. MINNI
Assistant United States Attorney

Dated:  August 23, 2023.